UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| WEST MICHIGAN BAND INSTRUMENTS, LLC, | ) ) | |
| Plaintiff, | ) ) | No. 1:17-cv-705 |
| -v- | ) ) | Honorable Paul L. Maloney |
| COOPERSVILLE PUBLIC SCHOOLS, ET AL., | ) ) ) | |
| Defendants. | ) ) | |

## OPINION

Schools enter into agreements with vendors for all types of goods and services, usually through a bidding process. Do they violate the First Amendment rights of competing vendors—who fully participated in the bid process, but were not chosen—when they exclude them from offering their services at school-organized events held on school grounds?

No. The law is clear that government entities have the ability to limit speakers based on identity or subject matter in limited public forums as long as the restrictions are reasonable. Because Plaintiff West Michigan Band Instruments, LLC has not pleaded facts that could give rise to a violation of its First Amendment rights, the Court will grant the Defendants' motion to dismiss.

I.  Background

WMBI is a music vendor, engaged in the business of selling and renting out band instruments and providing related services to students within many school districts across

Western Michigan. In the past, it has done business with families from the Coopersville Area Public Schools (CAPS), the primary Defendant in this action.[1]

WMBI alleges that in April of 2017, CAPS issued an Invitation to Bid (ITB) to band vendors, which informed the vendors that CAPS would select a single business to participate in the Parent Night at the start of the next school year. WMBI protested to the school superintendent, Veldman, that the policy was unlawful. CAPS' counsel responded that it could lawfully exclude vendors other than its chosen bidder.

WMBI submitted a bid in response to the ITB. But it was not chosen—Meyer Music, a competitor of WMBI, was. From these scant facts, WMBI claims that CAPS violated its First and Fourteenth Amendment rights.

## II. Legal Framework

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

---

[1] WMBI has also sued Ronald Veldman and Lisa Borst, but its claims are against these individuals in their official-capacity and redundant because "[t]here is no longer a need to bring official-capacity actions against local government officials for, under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly,* 550 U.S. at 556).

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform,* 648 F.3d at 369. However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations"; rather, "it must assert *sufficient* facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests." *Rhodes v. R&L Carriers, Inc.,* 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Twombly,* 550 U.S. at 555) (emphasis added).

III. Discussion

A. *First Amendment Framework*

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. Amend. I. Simply because the government may own a piece of property, however, does not mean that property is open to all types of expressive activity at all times. "[T]he State, no less than a private owner of property, has power to preserve the property under its control for the use which it is lawfully dedicated." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46 (1983).

"To determine the constitutionality of a government restriction on speech on publicly-owned property, we consider three questions: (1) whether the speech is protected under the First Amendment; (2) what type of forum is at issue and, therefore, what constitutional standard applies; (3) whether the restriction on speech in question satisfies the constitutional standard for the forum." *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010) (citing *S.H.A.R.K. v. Metro Parks Serving Summit County,* 499 F.3d 553, 559 (6th Cir. 2007)).

### B. Analysis

The Court concludes that, based on the facts pleaded, WMBI is engaged in protected commercial speech. Thus, it must proceed to determine what type of forum is presented by Parent Night.

If Parent Night is a designated public forum, then content-based restrictions on speech are prohibited unless necessary to serve compelling state interests, and they are narrowly tailored to achieve those interests. *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738 (6th Cir. 2004). If it is a limited public forum or nonpublic forum, the restrictions must simply be reasonable and viewpoint neutral. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239 (2015); *Perry*, 460 U.S. 37, 46 (1983).

There is no real dispute that Parent Night is either a limited public forum or a nonpublic forum. Accordingly, as long as CAPS' policy of selecting an exclusive vendor is (1) viewpoint neutral and (2) reasonable, it reflects a government entity lawfully exercising its power to restrict speech. *See Miller*, 622 F.3d at 535.

With respect to each of these elements, the Court finds the analysis to be largely the same as it was in a cognate case, *West Michigan Band Instruments, LLC v. Grandville Public Schools*. No. 17-704 (W.D. Mich. 2017). In that case, the Court denied WMBI's motion for a preliminary injunction, concluding primarily that WMBI was not likely to succeed on the merits in a challenge to a nearly identical school policy relating to Parent Night. *Id.* Dkt. No. 18.

First, the Court found that the policy of excluding all vendors except for the successful bidder, after an open bidding process, did not amount to viewpoint-based discrimination. *See id.* at PageID.165. Instead, it concluded that WMBI was excluded because of its identity as an unsuccessful bidder. That logic controls here—WMBI has not pleaded any *viewpoint* that would result in its exclusion from Parent Night.

WMBI's argument that it had a viewpoint—that it was the best vendor for CAPS' students—is unavailing. This type of "discrimination" occurs *every time* a government entity chooses a private company after a competitive bidding process. There is nothing unlawful about it. *Perry*, 460 U.S. at 49 ("Implicit in the concept of a nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions . . . are inherent and inescapable in the process of limiting a nonpublic forum . . . ."). Thus, CAPS' policy meets the first prong—it is viewpoint neutral.

Second, the Court finds the restriction on the forum—limiting access to Parent Night to only a single, chosen vendor—to be a matter of common sense that does not require a developed record to determine whether or not it is reasonable. *See NAACP v. City of Philadelphia*, 834 F.3d 435, 445 (3d Cir. 2016). CAPS' policy comports with the obvious,

5

common-sense purpose of Parent Night—it is about the students and their families. It allows students to become oriented with the school's band program, meet their instructors, and, as a matter of convenience, be fitted for an instrument. It is not intended as a purely capitalistic free-for-all for the areas' band vendors to compete for the attention of the students for profit. The policy allows CAPS to prevent—as another school district noted in a similar lawsuit—multiple vendors "tripping over each other." *W. Mi. Band Instruments, LLC v. Spring Lake Pub. Schools*, No. 16-cv-1132, Dkt. No. 8 at Page ID.32.

Just as a university policy of only allowing a single commercial photographer at its graduation ceremony was reasonable, *Foto USA, Inc. v. Board of Regents of Univ. Sys. of Fl.*, 141 F.3d 1032 (11th Cir. 1998), CAPS' policy of only allowing a single band vendor at Parent Night, chosen after a competitive bid process, was eminently reasonable. Accordingly, WMBI has failed to state a Constitutional claim against CAPS, so the motion to dismiss will be granted.

As the Court previously indicated, the claims against Veldman and Borst will also be dismissed, both because WMBI has failed to state a claim and because its official capacities claims against them are redundant.

### IV. Conclusion

For the reasons discussed, the Court will grant the Defendants' motion to dismiss.

# ORDER

For the reasons stated in the accompanying Opinion, the Court **GRANTS** Defendants' motion to dismiss. (ECF No. 15.)

Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

**JUDGMENT TO ENTER SEPARATELY.**

Date:  May 10, 2018   /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge